UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA, | ) | 3:16-CV-03019-RAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | PLAINTIFF'S MEMORANDUM OF |
| | ) | LAW IN SUPPORT OF |
| WAYFAIR INC. | ) | MOTION TO REMAND |
| OVERSTOCK.COM, INC. | ) | |
| NEWEGG INC. | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, State of South Dakota, by and through its undersigned counsel, Richard M. Williams and Kirsten E. Jasper, submit this memorandum of law in support of Plaintiff's Motion to Remand.  The State moves to remand this matter back to Hughes County, South Dakota, State Circuit Court.

PROCEDURAL HISTORY

During the 2016 Legislative Session, 91st Session, the South Dakota Legislature passed Senate Bill 106, "An Act to provide for the collection of sales taxes from certain remote sellers," ("Senate Bill 106") which requires that any seller of tangible personal property, products transferred electronically, or services for delivery into South Dakota, who does not have a physical presence in the state, shall remit sales tax and follow all applicable procedures and requirements of the law as if the seller had a physical presence in the state. On April 28, 2016, Plaintiff filed a complaint in State Circuit Court alleging that the above-named Defendants met the criteria of Senate Bill 106 and sought a declaratory ruling to enforce the provisions of Senate Bill 106.  *State of South*

1

*Dakota v. Wayfair Inc. et al.*, Circuit Court, Hughes County, 32 Civ. 16-92.  In lieu of filing an Answer in state court, on May 25, 2016, Defendants filed a Notice of Removal to this Court asserting a question of federal law.  Doc. 1. After removal, the parties filed a Joint Motion for Entry of a Briefing Schedule (Doc. 18) which, in addition to proposing a briefing schedule, requested an extension of the time allowed to file a motion to remand under 28 U.S.C. § 1447(c).  On June 29, 2016, this Court entered an Order Setting Briefing Schedule (Doc. 19) extending the time file a motion to remand until July 22, 2016.  In accordance with that Order, Plaintiff filed its motion to remand and this memorandum in support.

Shortly after the State filed its case in state court, two trade associations represented by the Defendants' same counsel filed a declaratory judgment action against the State, in state court, seeking pre-enforcement review of Senate Bill 106's constitutionality.  *See American Catalog Mailers Association and Netchoice v. Andy Gerlach,* Circuit Court, Hughes County, 32 Civ. 16-96.

## INTRODUCTION

Two unanimous decisions of the Supreme Court unambiguously require that this case be remanded to the state court in which it was brought.  The first, *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), makes clear that the federal courts lack removal jurisdiction in declaratory judgment cases just like this one, in which a state seeks a declaration that its own law is consistent with federal requirements.  The second, *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010), makes clear

2

that—even if this court had jurisdiction—state tax cases like this one belong in state courts as a matter of federal-state comity.  These holdings are particularly applicable here, where the State cause of action at issue was purpose-built by the South Dakota legislature to speedily resolve the underlying constitutional question in this dispute while protecting the interests of both the State *and* sellers like the defendants.  Because the State procedures the legislature created are more than adequate to protect the Defendants—and federal jurisdiction could frustrate the protections South Dakota has provided for *all* interested parties—it would be inappropriate for a federal court to take jurisdiction over this case.

Moreover, even if this Court were to ignore these two unanimous and dispositive Supreme Court holdings, it would only run square into other barriers to federal jurisdiction in this case.  For example, the Eighth Circuit has held that involuntarily forcing the State to prosecute its claim in federal court violates the Eleventh Amendment, even if the State is hailed into federal court as the plaintiff rather than the defendant.  *See Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 506 (8th Cir. 1995).  In addition, this Court lacks jurisdiction under the Tax Injunction Act to enter declaratory relief against the State in a case involving issues of state taxation.  *See* 28 U.S.C. §1341; *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (federal courts are "without jurisdiction to declare [a state] tax provision unconstitutional").  Both of these doctrines likewise prohibit federal jurisdiction here.  Accordingly, while the principles underlying these various doctrines share a common core,

3

Defendants would need to overcome (at least) these four separate hurdles to establish removal jurisdiction here.  And they certainly cannot do so, having failed to even gesture at the required showing in their notice of removal.  *See e.g.*, *Green v. Ameritrade*, 279 F.3d 590, 596 (8th Cir. 2002) (burden is on the removing party to clearly establish federal jurisdiction).

Indeed, even if the Court doubts that *any* of these doctrines alone require remand, remand would still remain the appropriate course.  The Eighth Circuit has repeatedly held that "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court."  *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015); *see also Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) ("[A] district court is required to resolve all doubts about federal jurisdiction in favor of remand."); *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993) (doubts about whether to grant removal are construed in favor of remand to state court jurisdiction).  The reason for this doctrine is obvious: Keeping a case when jurisdiction is doubtful can result in a considerable waste of time and judicial resources, especially because jurisdictional issues are unwaiveable and may be raised *sua sponte* by later courts, even if the parties simply want their dispute to be finally decided.  And that reasoning is particularly applicable here:  The very point of Senate Bill 106 and the lawsuit filed by the State was to speedily accept Justice Kennedy's invitation to "find an appropriate case for th[e] Court to reexamine *Quill* and *Bellas Hess*."  *Direct Marketing Ass'n v. Brohl*, 135 S.Ct. 1124, 1136 (2015) (Kennedy, J.

concurring).  That quest could be derailed for years if the case filed by the State remains in federal court, only for the Eighth Circuit or Supreme Court to later hold that it cannot reach the merits because federal jurisdiction is lacking.  A simple remand avoids this problem entirely.

In the end, the lawsuit the State filed belongs in state court, alongside the other case raising the same question brought by the very same counsel representing Defendants here.  Accordingly, because it lacks jurisdiction and because of the demands of comity and judicial economy, this Court should speedily return this case to state court.

BACKGROUND

The background of Senate Bill 106 and this dispute are laid out in the State's Complaint.  *See* Doc. 1-1, p. 5-24 ("Compl.").  Briefly, in Senate Bill 106, the South Dakota legislature required out-of-state sellers to collect the State's sales tax as though they had a physical presence in South Dakota, but only if they transact a large volume of business with South Dakota citizens by delivering goods or services to them in the State.  Compl. ¶ 29.  The threshold for triggering this requirement is $100,000 worth of business or 200 separate transactions annually.  *Id.*  The Complaint acknowledges that applying this rule to these Defendants will require at least partial abrogation of the holdings in *National Bellas Hess, Inc. v. Department of Revenue of Illinois*, 386 U.S. 753 (1967), and *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992).  These cases held, respectively, that catalog mailers lacking physical presence within a State could not be required to collect the State's sales tax under the dormant

5

Commerce Clause (*Bellas Hess*) and, later, that while this rule might well be incorrect, and no longer had any basis in doctrines of Due Process, it would still be retained as a matter of stare decisis (*Quill*).

Quill was decided in 1992, shortly before the Internet revolution that reshaped the face of consumer retail and the way that "remote" sellers interact with their customers.  In his concurring opinion in a recent case, Justice Kennedy recognized that the technological revolution now allows Internet retailers to be "present" in a different way from the catalog mailers at issue in *Bellas Hess* and *Quill,* and he stressed the "urgent" need for the Court to reconsider those cases because of the increasing harms that they were causing to state treasuries.  *See* Compl. ¶¶ 8-11; *Brohl*, 135 S.Ct. 1134-35 (Kennedy, J. concurring).  Justice Kennedy expressly asked the States to create vehicles for *Quill*'s reconsideration.  *Id.*  Notably, Justice Kennedy is one of only two Justices remaining from the *Quill* court, and neither of those Justices joined that Court's principal opinion, because they refused to endorse the *Quill* rule in any respect on the merits.

The South Dakota legislature enacted Senate Bill 106 to take up Justice Kennedy's invitation.  In so doing, the legislature itself noted that *Quill*'s ambivalent refusal to jettison the outdated holding of *Bellas Hess* was now causing greater harm to the State because of the growth of Internet retail. Compl. ¶ 43.

In addition to its requirement that certain out-of-state retailers collect the State's sales tax, Senate Bill 106 created a bespoke cause of action that the

legislature crafted both to answer Justice Kennedy's call for expedition and to protect remote sellers like defendants from the unique bind that such legislation might create. To promote expedition and to protect the State treasury from further harm, the law creates a declaratory judgment action that the State may bring immediately against those who do not comply, obviating the need for an audit and directing both the South Dakota Circuit Court and South Dakota Supreme Court to adjudicate the action as quickly as possible. *See* Compl. ¶ 50. But to protect sellers like defendants, who face a particularly difficult bind in this area,[1] the legislature provided for an automatic injunction against enforcement of the law while any such suit was pending, and provided that assessment and collection would be sought only prospectively from the date of any decision in the State's favor. *Id.*; *see also* Doc. 1-1, p. 27-32 (Senate Bill 106 §§2, 4). In simple terms, the goal of this statutory framework was to allow the courts to finally determine whether *Quill* should be modified or rejected before any sellers would start accruing sales tax liabilities to the

---

[1] Relative to most taxpayers, it can be harder for remote sellers who want to invoke *Quill* against Senate Bill 106 to follow the usual course of paying the tax and suing for a refund. That is because the tax is usually collected from the purchaser at the time of sale, and can often equal or exceed the seller's profit margin. If the seller collects the tax, he *must* remit it to the State: He cannot tell the purchaser he is collecting a tax and then keep it for himself on the ground that the Constitution protects him from having to collect the tax in the first place. But if he does not collect the tax, he must pay it from his own pocket before invoking *Quill* and suing for a refund, and will not be able to charge the consumer if he ultimately loses. Accordingly, the typical procedure presents the risk that a long period of sales will be converted from profits into losses, because each sale during that period involved an uncollected sales tax exceeding the profit margin on that sale. The unique terms of Senate Bill 106 provide taxpayers protection from this difficult bind while the constitutionality of the law is finally adjudicated by the courts.

State—which they may not have collected from consumers at the point of sale. Accordingly, neither the Defendants in this action nor third-party, out-of-state retailers incur tax risk by failing to collect South Dakota sales tax during the pendency of the action filed by the State in state court.

To help assure remote sellers of this protection, the State filed the state court action shortly before Senate Bill 106 was to take effect, but more than a month after providing direct notice to the Defendants and others that they needed to register to collect the tax (which they failed to do).  *See* Compl. ¶¶ 24, 31.  The State's Complaint seeks a declaratory judgment that these Defendants are validly required to collect and remit sales tax under Senate Bill 106.  The State also sued a fourth Defendant, Systemax, Inc., but dismissed Systemax after it immediately began complying with the law and committed to continuing that compliance.  *State of South Dakota v. Wayfair Inc. et al.*, Circuit Court, Hughes County, 32 Civ. 16-92, "Plaintiff's Notice of Voluntary Dismissal without Prejudice RE: Systemax Inc."  Pursuant to Senate Bill 106's unique procedural provisions, the State's Complaint also asked the state court to formally enjoin enforcement of Senate Bill 106, and to dissolve that injunction only upon a final grant of declaratory judgment in the State's favor.  *See* Compl. pp.19-20 (Prayer for Relief).

Shortly thereafter, two trade associations represented by the same counsel that represent the Defendants here filed a declaratory judgment action in state court seeking pre-enforcement review of Senate Bill 106's constitutionality.  *See American Catalog Mailers Association and Netchoice v.*

*Andy Gerlach,* Circuit Court, Hughes County, 32 Civ. 16-96..  The State has

filed an answer in that case, which remains pending before the state court.

Before the state court took any action in the case filed by the State, the

Defendants filed a notice of removal to this Court.  *See* Dkt. 1.  That notice

invokes only the Court's federal question jurisdiction under 28 U.S.C. §1331,

and argues only that a federal question is presented because an issue of federal

law appears on the face of the State's Complaint.  *See* Dkt. 1, ¶ 10.

ARGUMENT

There is no dispute that the central—and perhaps, only—dispute in this

case turns on a question of federal law.  But in several tax-related cases with

that exact feature, the Supreme Court has held that the federal courts either

lack jurisdiction over such cases, or should send them to state court as a

matter of comity.  Both doctrines provide an easy basis for remand here.

Indeed, a remand is necessary to protect the very purpose of this cause

of action.  The entire point of the lawsuit filed by the State is to give the State

and parties like these defendants a quick answer to the question whether its

tax is constitutional in light of Justice Kennedy's invitation to bring that

question before the Supreme Court.  But because jurisdictional problems

cannot be waived, *see Steel Co. v. Citizens for Better Environment*, 523 U.S. 83

(1998), the effect of dragging this case into federal court at the beginning of its

journey may be to deny both groups an answer on the merits for years:  Even if

the State accedes to federal jurisdiction, the Eighth Circuit or Supreme Court

*cannot* resolve the disputed issue if either determines on its own that federal

9

jurisdiction is lacking, and will instead send the case back to its very beginning in state court.  Cases like *Franchise Tax Board* show that the need for a remand is indisputable here.  But even if they did not, remand would be the better course because, while state-court jurisdiction is unambiguous, federal jurisdiction is at least dubious, and the Eighth Circuit has definitively held that remand is required under those circumstances.  *See, e.g.*, *Hubbard*, 799 F.3d at 1227.

**I.     This Court Lacks Jurisdiction Over This Case Under The Holding of *Franchise Tax Board*.**

The holding in *Franchise Tax Board*, finding that the federal district court lacked jurisdiction in that matter, controls this case.  Indeed, given the special barriers to federal jurisdiction that were absent in that case but would bar Defendants from affirmatively bringing this suit in federal court—including both the Tax Injunction Act and the Eleventh Amendment—the holding of *Franchise Tax Board* is actually much broader than necessary to find in favor of remand here.

In *Franchise Tax Board*, the Supreme Court considered a case in which the state entity, the California Franchise Tax Board, sought to collect unpaid state income taxes by levying on funds held in trust under an ERISA plan.  *See* 463 U.S. at 3-4.  Because ERISA arguably preempted the Board's state-law granted authority to levy upon the trust, the Board brought two separate causes of action under state law in state court.  The first cause of action sought to impose the state-law levies; the second cause of action sought a

10

declaration, pursuant to a state declaratory judgment act, that the Board's power to levy was valid and not preempted under ERISA—a federal law.  *See id.* at 4-7.  Thus, in a perfect parallel to the facts here, the second claim involved a (1) state-law cause of action for declaratory judgment, (2) brought by a state entity, (3) in state court, (4) seeking a declaration that an application of state law was valid under federal law.  As here, the Supreme Court recognized that the only disputed issue in the case was the facially obvious question of federal law.  *See, e.g., id.* at 3-4, 11.  Yet the Court ultimately held that such a state-law declaratory judgment action falls outside the removal jurisdiction of the federal courts.  *See id.* at 4, 19-22 & n.22.  That holding, upon essentially identical facts, controls.

The reasoning of *Franchise Tax Board* boils down to an application of the well-pleaded complaint rule.  The Court noted that, under its decision in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), the test of jurisdiction in a declaratory judgment action depends not on how *that* action is pleaded, but on how a party would plead a hypothetical action for *non*-declaratory relief respecting the same issue.  "If, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking."  *Franchise Tax Board*, 463 U.S. at 16 (quoting *Wright & Miller*).

The Court then explained that, while *Skelly Oil* itself applied only to claims under the federal Declaratory Judgment Act, it would extend that same rule to state claims for declaratory judgment as well.  *Id.* at 17-19.  Because

the preemption argument in *Franchise Tax Board*—like defendants' dormant Commerce Clause argument here—would ordinarily arise only as a defense to an enforcement action, the case did not present a federal question.  *Id.* at 19-21.

Succinctly, the Supreme Court held that "a State's suit for a declaration of the validity of state law … is not within the original jurisdiction of the United States district courts."  *Id.* at 21-22.  "Accordingly, the same suit brought originally in state court is not removable either."  *Id.* at 21-22.  It would be hard to state more precisely a rule that precludes a finding of jurisdiction in this case.

Indeed, while that succinct holding clearly requires a remand here, it is worth noting that the decision in *Franchise Tax Board* was in fact broader than necessary to decide this case.  In *Franchise Tax Board*, there was an express federal cause of action, created by ERISA, that the declaratory judgment Defendants could have brought to enjoin the State action at issue here.  *See id.* at 19.  Nonetheless, the Court ultimately held that federal jurisdiction was absent even though it was willing to assume that the defendants "could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA," *id.* at 20.[2]  Here, it is far more obvious that Congress has not provided a pathway to federal court for this particular federal question:  There is no specific cause of action available under federal law to enjoin the effect of Senate Bill 106; the Supreme Court has

---

[2]    The Court did question in a footnote whether such an action for an injunction might fail under the Tax Injunction Act.  *See id.* at 20 n.21

expressly held that Section 1983 is *unavailable* for dormant Commerce Clause claims regarding state taxes as long as an adequate state legal remedy exists, *see Nat'l Private Truck Council, Inc. v. Ok. Tax Comm'n*, 515 U.S. 582, 592 (1995); and the Tax Injunction Act unambiguously forbids an affirmative suit by a taxpayer seeking to enjoin the enforcement of a state tax provision, *see, e.g.*, *Grace Brethren Church*, 457 U.S. at 408 (forbidding declaratory relief against a state tax imposition in federal court).  It is thus hard to imagine a case that is *less* suited to federal court than this one.

That makes this an especially easy case for remand.  Simply put, in *Franchise Tax Board*, the unanimous Supreme Court was unwilling to find a federal question even where federal law expressly provided a cause of action to the defendants to raise the federal issue.  It would thus be doubly impossible to find a federal question where, as here, it is impossible to imagine Defendants even trying to bring a case raising this issue originally to federal court.[3]

As the Supreme Court explained in *Franchise Tax Board*, this rule has a strong rooting in notions of federal-state comity.  The Court did not deny federal-court jurisdiction to state-initiated suits to determine the validity of state laws because it was worried "that States w[ould] flood the federal courts with declaratory judgment actions."  *Franchise Tax Bd.*, 463 U.S. at 22, n.22.  Rather, the concern was to avoid precisely what happened here—*i.e.*, that States would seek "a declaration in state court and the defendant [would]

---

[3] This point is illustrated by the fact that when Defendants' counsel filed *American Catalog Mailers Association and Netchoice v. Andy Gerlach,* they did so in state court.

remove[] the case to federal court." *Id.* The Court found it "appropriate to note that considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Id.*

Here, as in *Franchise Tax Board*, there is no rule, statute, or principle that could justify taking a case like this one away from the state courts. Indeed, as noted above (and explained in even greater detail below), to the extent that there are other rules of comity and jurisdiction bearing on this case, they uniformly recommend against a federal forum. Accordingly, this Court should remand this matter to state court for lack of jurisdiction.

## II.  This Action Must Be Remanded To State Court As A Matter Of Federal-State Comity

Setting aside the absence of federal-question jurisdiction under *Franchise Tax Board*, the Supreme Court has recently and (again) unanimously made very clear that federal courts should refuse to take jurisdiction over state tax cases absent a very special reason to do otherwise. *See Levin*, 560 U.S. at 422. That dispositive holding reflects the Supreme Court's unwavering, centuries-old view that "the modes adopted to enforce the taxes levied [by States] should be interfered with as little as possible" by the federal courts, *id.* (quoting *Dows v. Chicago*, 11 Wall. 108, 110 (1871)), and so equitable relief from federal courts should be denied "in all cases where the Federal rights [asserted] could otherwise be preserved unimpaired." *Levin*, 560 U.S. at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)). As the Supreme Court has repeatedly put it: "[s]o long as the state

14

remedy [i]s 'plain, adequate, and complete,' ... 'such relief should be denied *in every case* where the asserted federal right may be preserved without it.'" *Levin*, 560 U.S. at 422 (emphasis added, quoting *Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932)); *see also Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 108 (1981).  So too here.

Indeed, this is a case in which federal interference with the State's chosen mode of resolving an issue of state taxation is both unnecessary and intrusive.  As the Supreme Court noted in *Fair Assessment,* that intrusion comes not only from the prospect of a federal-court judgment against the State, but from the mere "maintenance of the suit itself" which can disrupt the State's chosen procedures.  *See Fair Assessment*, 454 U.S., at 114.  In this instance, the state-court cause of action that Defendants removed was specially crafted by the South Dakota legislature to preserve the rights and interests of the State *and* provide the best possible procedural relief to remote sellers affected by Senate Bill 106.  As explained above, *Levin*'s broad and unanimous holding applies on its face, and the Court can stop there.  But as the State explains briefly below, *Levin* also applies at a more granular level, and this analysis only cements the need for this Court to remand.  *See Levin*, 560 U.S. 413; *Fair Assessment*, 454 U.S. 100; *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943); *Matthews v. Rodgers*, 284 U.S. 521 (1932).

### A.  Each of the factors emphasized in *Levin* is present here.

In summarizing its holding in *Levin*, the Supreme Court emphasized three factors that it believed weighed in favor of the federal courts refusing to

take jurisdiction over that particular state tax dispute.  Each of the factors is likewise present here.

*First*, in *Levin*, the Court emphasized that remand was appropriate because the taxpayers in the action sought "review of commercial matters over which [the State] enjoys wide regulatory latitude," such that "their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny."  560 U.S. at 431.  That is equally true here.  In *Levin*, the Supreme Court was distinguishing its decision in *Hibbs v. Winn*, 542 U.S. 88 (2004), where the Court permitted federal jurisdiction in part because the question presented involved a fundamental right under the Establishment Clause.  In contrast, *Levin*—as here—involved a claim by some taxpayers that they were being discriminated against relative to other competitors who were given different tax treatment.  The analogy is quite precise:  The Supreme Court expressly noted that the taxpayers' arguments that they were subjected to special tax burdens was not one that recommended in favor of federal jurisdiction, "either under an equal protection *or dormant Commerce Clause* theory."  560 U.S. at 426 (emphasis added).  Accordingly, Defendants' claim here is clearly one for which *Levin*'s first factor counsels in favor of remand.

*Second*, in *Levin*, the Court noted that "while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position."  *Id.* at 431.  This factor is likewise present—and especially compelling—here.

16

One of the key problems with the *Bellas Hess* regime, as noted by both the South Dakota legislature and many economic experts, is that it creates an economically irrational tax preference for retailers who avoid any physical presence within a State.  *See* Compl. ¶¶ 43-49 (citing Austan Goolsbee, *In a World Without Borders: The Impact of Taxes on Internet Commerce*, 115 Q.J. ECON. 561 (2000); Arthur B. Laffler & Donna Arduin, "Pro-Growth Tax Reform and E-Fairness" (July 2013) [http://standwithrn.runstreet.cotn/ArtLafferStudy.pdf]).  As even the Supreme Court recognized in *Quill*, the rule can be entirely arbitrary:  A large retailer with a store in Rapid City must collect sales taxes on Internet-based sales delivered to Sioux Falls, even if the product is shipped from California; by contrast, an Internet retailer with a warehouse in Sioux City, Iowa can deliver products to nearby Sioux Falls residents without charging sales tax.  This irrational tax preference provides Internet-only retailers with a huge competitive advantage, because their products appear cheaper to consumers at the point of sale.  Accordingly, in another exact parallel to *Levin*, Defendants here are pressing their federal law arguments in an effort to "improve their competitive position" by maintaining the tax preference they have previously enjoyed.  560 U.S. at 431.  Whatever the merits of those arguments, *Levin* makes it unmistakably clear that they belong in state court.

*Third*, in *Levin*, the Court was concerned about an assertion of federal jurisdiction because the remedial options were constrained in federal court by

17

the Tax Injunction Act.  *See Levin*, 560 U.S., at 431–32.  That is true here as well.

As explained below, if Defendants prevail, this Court will have no power to enter any kind of injunction against the State, because the Tax Injunction Act expressly forecloses that form of relief.  *See* 28 U.S.C. §1341, *infra* p.X. Indeed, while this Court could (perhaps) deny the State's requested declaration, it cannot even grant a declaration regarding the scope of the dormant Commerce Clause in favor of the Defendants.  *See id.*; *Grace Brethren Church*, 457 U.S. at 408.  As a result, this Court cannot resolve this case by preventing the State from enforcing the requirements of Senate Bill 106 against other similar parties in the future—indeed, it may not even be able to prevent future enforcement against Defendants themselves.  Clearly, South Dakota "courts are better positioned than their federal counterparts to correct any violation." *Levin*, 560 U.S., at 431.

The problem arises from the unique structure of Senate Bill 106.  During the pendency of this action, Senate Bill 106 automatically enjoins the enforcement of its requirements.  Once the action ends, however, that injunction will be dissolved.  Suppose that, two years later, the Supreme Court resolves to overturn *Quill* in a case arising from another state—a reasonably likely scenario, as Justice Kennedy's invitation has sparked new legislative action in many different jurisdictions.  *See, e.g.*, Liz Malm, *Your States Have Enacted Sales Tax Nexus Legislation This Year, With Dozens Of Other Bills Still Active*, MULTISTATE INSIDER (May 10, 2016),

https://www.multistate.com/insider/2016/05/three-states-have-enacted-sales-tax-nexus-legislation-this-year-with-dozens-of-other-bills-still-active/.  At that point, the State could well seek two years of unpaid sales taxes from out-of-state retailers who will no longer be able to invoke *Quill* as a defense; indeed, the State could seek those back taxes from these very Defendants.  It is thus better protection *to taxpayers* to direct this suit to state court, where the full panoply of injunctive and declaratory relief is available.  Not only does this Court lack the power to grant affirmative relief in a pre-enforcement tax challenge, it cannot even make interpretations of Senate Bill 106's unique injunctive and remedial protections for taxpayers that will be binding on the State courts, because of their superior position in the interpretation of State law.  *See Levin*, 560 U.S. at 429.  Accordingly, this action is better suited to the State courts, "because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options."  *Id.* at 432.

## B.  Additional considerations also recommend a remand on comity grounds.

Beyond the three factors that were the focus in *Levin*, there are additional considerations that recommend in favor of a remand for comity reasons.  Some of these concerns go under the related heading of the "abstention" doctrine, but each embodies a reason why the federal courts should avoid interfering with state-court resolution of an issue like this one based on a due regard for principles of federalism.

First, taking jurisdiction here interferes with ongoing state-court proceedings in two separate respects.  *See Younger v. Harris*, 401 U.S. 37

(1971) (holding that principles of federalism prohibit federal courts from taking jurisdiction over disputes when doing so would interfere with an ongoing state proceeding).  In *Levin*, the suit at issue was brought originally in federal court and had no parallel state-court proceeding.  Here, not only was the suit initially brought in state court—so that removal would involve "snatch[ing] cases which a State has brought from the courts of that State," where "comity makes us reluctant to" do so, *Franchise Tax Bd.*, 463 U.S. at 21, n.22—but there is also an ongoing action, in the same state court, brought by the same lawyers, respecting the exact same questions as those presented here.  *See Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004) ("[F]ederal courts should abstain from exercising jurisdiction" where there is "an ongoing state judicial proceeding, … which implicates important state interests[.]").  That pending action makes it particularly clear that taking jurisdiction over the case filed by the State would both "unduly interfere with the legitimate activities of the States," *Levin*, 560 U.S. at 431 (quoting *Younger*, 401 U.S. at 44), and be a waste of judicial resources.

In fact, the Supreme Court and the Eighth Circuit have both held that it is particularly appropriate for a federal court to decline jurisdiction in cases seeking a declaratory judgment where there are parallel state proceedings, precisely because declaratory relief is equitable and discretionary.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial

administration."); *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998-99 (8th Cir. 2005) (holding that, even where there is not a parallel state-court proceeding, federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment action).  Because exercising jurisdiction over this declaratory-judgment action would deprive the South Dakota trial court of jurisdiction over this case—as well as needlessly duplicate the state court's efforts in the sister suit filed by Defendants' own counsel still pending in that court—it would be particularly appropriate to decline to exercise removal jurisdiction over a declaratory judgment action here.  *See* Reifer *v. Westport Ins. Corp.*, 751 F.3d 129, 149 (3rd Cir. 2014) (applying *Wilton* to affirm district court declining removal jurisdiction over declaratory judgment action).

Second, taking jurisdiction here involves upsetting the careful procedural balance struck by Senate Bill 106 in a myriad of ways.  *See Moe v. Brookings Cnt. S.D.*, 659 F.2d 880, 883 (8th Cir. 1981) (applying abstention where federal court review would be "disruptive of a state regulatory scheme that provided for an elaborate review system.").  As explained above, Senate Bill 106 has special procedures that limit the exposure remote sellers (including Defendants) face while the constitutionality of Senate Bill 106 is determined.  These procedures are provided as a matter of legislative grace; other states, for example, have taken up Justice Kennedy's invitation by undertaking assessments and forcing taxpayers to bring suit to assert their rights.  *See, e.g.*, http://goo.gl/wu8r9t (detailing Alabama's regulation and ensuing litigation brought by defendant Newegg).  The legislative tradeoff for the special protections provided by Senate

Bill 106 to taxpayers was a series of procedural rules designed to speed the case towards a resolution on the merits—including a direction to both the South Dakota Circuit Court and the South Dakota Supreme Court to resolve the case as expeditiously as possible.  As explained above, moving this case to federal court might actually frustrate some of the protections provided to remote sellers like the defendants.  *See supra* p.18.  But at a minimum, it deprives the State of the various procedural protections that the legislature created for the State's benefit as part of the exchange.  Federal courts should not take jurisdiction over matters for which the State has created an adequate vehicle where doing so might upset the regulatory balance that the State has struck.  *See Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 934 (8th Cir. 2013) ("[A]bstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests[.]") (quoting *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 825 (8th Cir. 1990)); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32 (1982) (noting "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."); *Dows*, 11 Wall. at 110 ("[I]t is of the utmost importance to all of [the States] that the modes adopted to enforce the taxes levied should be interfered with as little as possible.").

Third, and critically, comity is a good reason to abstain from taking jurisdiction over a case when federal jurisdiction is itself a dubious proposition in the first place.  There is an isolated controversy between the parties here

implicating a question on which the Supreme Court has expressed its interest in seeing vehicles come to the bar.  The one thing most likely to sabotage the effort to bring an effective vehicle before the Court is to burden the case with a jurisdictional question that the parties cannot waive, and that the Court will have to resolve anew on its own before it can reach the merits in the case.  This is particularly harmful here because the State has—and, indeed, *all* the parties have—a vital interest in resolution *on the merits*; by permitting remote sellers to withhold compliance while the State seeks a judgment in its favor, the State has assumed the rather sizable cost of a years-long delay that could result from erroneously keeping this case before the federal courts.  In addition to the issues above, there are (at least) two further jurisdictional problems raised by keeping this suit in federal court.  The fact that *multiple* jurisdictional issues will follow this case to its finish line, forever threatening to trip it up, is a powerful reason to send this case back to the state courts who can unambiguously adjudicate it on the merits.

## III.   The Eleventh Amendment Prohibits Removal Of This Suit.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  As the Supreme Court has recognized, the amendment essentially codified a tradition of state sovereign immunity that extends well beyond its plain text.  *See, e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 15-16 (1890) (applying

23

amendment to suits by a State's own citizens).  Accordingly, the Eighth Circuit has expressly held that the Eleventh Amendment and related doctrines of State sovereign immunity apply even where the State is a plaintiff in federal court, rather than the defendant, and that South Dakota thus cannot be dragged into federal court absent its affirmative consent.

The controlling case on this issue is *Thomas v. FAG Bearings Corp.*, 50 F.3d 502 (8th Cir. 1995).  In that case, the two private parties were litigating environmental claims related to other claims that a Missouri agency had publicly said it might also bring against defendant FAG.  The defendant thus sought to involuntarily join the state agency as a party to the ongoing federal court suit in order to prevent double recovery.  It argued that this step was proper under the Eleventh Amendment because the State would be joined as a *plaintiff*, and that the text of the Amendment would not apply in that circumstances, because no party was "prosecuting" any claim against the State.  *See id.* at 503-04, 506-07.  The Eighth Circuit, however, "rejected a 'plain words' interpretation of the Eleventh Amendment," and held that the State could not be forced into federal court.  *Id.* at 505.

The Court's reasoning is dispositive here.  Critically, the Court recognized that "when a state voluntarily appears as a plaintiff and subjects itself to a federal court's jurisdiction, we do not say that the Eleventh Amendment is irrelevant or that the state never had immunity.  Instead, we find that the state has waived this immunity by agreeing to participate as a plaintiff."  *Id.* at 506.  Accordingly, the Court held that if a State is hailed into a federal court as a

plaintiff *against its wishes*, it continues to enjoy sovereign immunity, and the federal court cannot take jurisdiction over the suit.  *Id.* at 506-07; *see also id.* at 506 ("The cases applying the strict waiver standard focus on the Eleventh Amendment's respect for state autonomy, and not on the procedural status of a case.  Thus, concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation.").

Although this holding disposes of the case, it is worth noting that a federal court taking jurisdiction over a declaratory judgment action brought by a state also falls neatly within the text of the Eleventh Amendment.  In a case where a state sues a private citizen for damages or a money judgment in federal court, and the private citizen prevails, no relief is entered by the court against the State—the court merely refuses to give the State the relief it requested.  But in this declaratory judgment action, the court presumably would not simply deny the State the declaratory relief it seeks; it would, instead, declare that the State law at issue violates federal law.  An action in which the court may grant that relief is quite clearly being "prosecuted against one of the United States."  U.S. Const. amend XI; *see also FAG Bearings*, 50 F.3d at 505 ("A suit is against the state if ... the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)).  It may be that *some* suits brought by a state can be removed involuntarily to federal court (although not in this Circuit); but it is clear that a case where a

party seeks a declaration that federal law protects it from a tax collection is clearly barred from federal court by both general principles of sovereign immunity and the express text of the Eleventh Amendment as well.

## IV.   The Tax Injunction Act Prohibits Federal Jurisdiction Over This Matter As Well.

Finally, and for related reasons, allowing this case to proceed in federal court would violate the Tax Injunction Act, 28 U.S.C. §1341, which has been held to be a jurisdictional limitation.   *See DMA*, 135 S.Ct. at 1134.

As explained above, the Tax Injunction Act prohibits a federal court from awarding any relief that would "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. §1341.  The Supreme Court has expressly held that an action for a declaratory judgment that a tax is invalid falls within the Act's prohibition.  The Court's language quite clearly covers this case:  "[W]e now conclude that the Act … prohibits a district court from issuing a declaratory judgment holding state tax laws unconstitutional." *Grace Brethren Church*, 457 U.S. at 408.  In every practical respect, this case will ask this Court to "issu[e] a declaratory judgment holding [a] state tax law unconstitutional."  It will thus plainly ask for something this Court cannot grant under the Tax Injunction Act, making clear that federal jurisdiction is absent.

This is true for a second reason as well.  As explained above, the State itself asked the state court to enter an injunction recording the legal effect of Senate Bill 106 and prohibiting the State from enforcing the law's requirements

during the pendency of this action.  This Court clearly cannot enter such an order because the Tax Injunction Act forbids it.  There is thus a difficult—and entirely unnecessary—question about whether this Court can enter and dissolve the injunction required by Senate Bill 106 to protect (at least) remote sellers other than these Defendants from the effect of the law.  *See supra* p.16.  That a federal court is uniquely incapable of entering the relief necessitated by Senate Bill 106 itself is but another reason to recognize that the Tax Injunction Act prohibits federal jurisdiction in this case.

To be sure, the Supreme Court held in *Jefferson County v. Acker*, 527 U.S. 423, 433 (1999), that the Tax Injunction Act does not forbid a federal court from entertaining a federal constitutional defense when a *collection* suit brought by a State in state court is removed to federal court.[4]  Parsing the text of the statute, the Court held that while an action seeking a declaration that a tax was unconstitutional would be barred, the Act would not forbid a state from bringing a collection suit in federal court, because that action would not be one to enjoin or restrain a state tax (indeed, it would be the opposite).  *Id.* at 435.  The Court further concluded that, if such a collection suit could proceed in federal court, then the Act "does [not] prevent taxpayers from urging defenses in such suits that the tax for which collection is sought is invalid."  *Id.*

---

[4] Notably, *Acker* was removed under the federal officer removal provision, and not the federal question jurisdiction defendants assert here.  Accordingly, no issue arose under *Franchise Tax Board.*  Moreover, the suit was brought by a municipality and not the State (foreclosing the Eleventh Amendment issue) and the parties did not ask the Court to refrain from exercising jurisdiction as a matter of comity.  *See Acker*, 527 U.S. at 435 nn.4-5 (noting that neither party had invoked comity or abstention doctrines, which could counsel against jurisdiction).

But, notably, unlike the language in *Grace Brethren Church*, that holding does not encompass this case:  This is not a *collection* suit, and Defendants are not asserting a defense to collection.  Instead, the Court is being called upon here for the sole purpose of rendering a declaration respecting the constitutionality of a State tax, and that is relief that the holding of *Grace Brethren Church* forbids on its face.

CONCLUSION

For the reasons stated above, removal of this case to federal court faces three separate and insurmountable jurisdictional barriers, and even if it did not, it would still have to be remanded to state court for reasons of comity.  Indeed, even if this Court were only doubtful of its jurisdiction, controlling law would require a remand.  *See Hubbard*, 799 F.3d at 1227.  The State respectfully requests the Court immediately remand this action back to the Circuit Court of Hughes County for further proceedings.

Respectfully submitted,

/s/ Kirsten E. Jasper
Kirsten E. Jasper
Assistant Attorney General
Richard M. Williams
Deputy Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD  57501-8501
(605) 773-3215

*Attorneys for the State of South Dakota*

CERTIFICATE OF COMPLIANCE

1.      I certify that the foregoing document is within the limitation provided for in D.S.D. Civ. LR 7.1(B)(1) using Bookman Old Style typeface in 12 point type.  Said Memorandum contains 7,836 words.

2.      I certify that the word processing software used to prepare this brief is Microsoft Word 2011.

Dated this 22nd day of July, 2016.


/s/ Kirsten E. Jasper
Kirsten E. Jasper
Assistant Attorney General


**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of July, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central Division by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


/s/ Kirsten E. Jasper
Kirsten E. Jasper
Assistant Attorney General