FILED

JAN 17 2017

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| STATE OF SOUTH DAKOTA, | **3:16-CV-03019-RAL** |
| Plaintiff, | |
| vs. | **ORDER AND OPINION GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT** |
| WAYFAIR, INC., OVERSTOCK.COM, INC., AND NEWEGG, INC., | |
| Defendants. | |

The State of South Dakota sued Defendants Wayfair, Inc., Overstock.com, Inc., and Newegg, Inc.[1] in state circuit court to enforce a new state law requiring the remittance of sales tax on internet sales to South Dakotans by sellers lacking a physical presence within South Dakota. Doc. 1-1. Defendants removed the action to this federal district court alleging federal question jurisdiction. Doc. 1. Plaintiffs filed a Motion to Remand to State Court, Doc. 21, and on the same day, Defendants filed a Motion for Summary Judgment, Doc. 25. Because there is no federal jurisdiction over this state taxation case based on <u>Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California</u>, 463 U.S. 1 (1983), this Court remands the case to state court.

## I.    Background

The Supreme Court in <u>Quill Corp. v. North Dakota</u>, 504 U.S. 298 (1992) reaffirmed the prohibition on states levying a sales and use tax on sales by businesses that lack a physical presence within the state. Echoing its prior decision in <u>National Bellas Hess, Inc. v. Department</u>

---

[1] The State of South Dakota also named Systemax, Inc. as a defendant in its Complaint. <u>See</u> Doc. 1-1. Systemax, Inc. chose not to contest payment of the state sales tax at issue and no longer is a defendant in this case. Doc. 1 at 2.

of Revenue of Illinois, 386 U.S. 753 (1967), the Court in Quill held that while a physical presence was not required under the Due Process Clause when seeking to impose a duty to collect a state use tax, a physical presence was required to avoid a violation of the "negative" or "dormant" Commerce Clause's substantial nexus requirements. Quill, 504 U.S. at 312. Based on stare decisis, Quill, though decided well before the internet-sales boom, acknowledged the fading distinctions between direct and indirect taxes perpetuated by formalism and drafting. Quill, 504 U.S. at 311 ("[C]ontemporary Commerce Clause jurisprudence might not dictate the same result were the issue to arise for the first time today."). Recently, in Direct Marketing Ass'n v. Brohl, 135 S. Ct. 1124 (2015), the Supreme Court decided a case touching on Bellas Hess, Quill, and the dispute at issue here. Acknowledging the precedent of Quill, the state of Colorado passed a law requiring consumers themselves to fill out a return and remit taxes to the state on items purchased online from sellers who do not collect state sales and use taxes; retailers were responsible for notifying consumers of the self-reporting and taxation requirements. Brohl, 135 S. Ct. at 1127–28. In discussing the Colorado tax law, the majority acknowledged the internet's impact on state revenues, but as it was not within the gambit of the question presented, did not discuss the idea that Quill was wrongly decided or outdated. Id. Justice Kennedy's concurrence, however, focused on the need to reevaluate Quill in light of "changes in technology and consumer sophistication." Id. at 1135 (Kennedy, J., concurring). Justice Kennedy wrote that "[t]he legal system should find an appropriate case for this Court to reexamine Quill and Bellas Hess." Id.

Justice Kennedy's concurrence in Brohl spurred quick action from the State of South Dakota. During the 2016 Legislative Session, the South Dakota Legislature passed Senate Bill 106, "An Act to provide for the collection of sales taxes from certain remote sellers." S.B. 106,

2

2016 Leg., 91st Sess. (S.D. 2016). This bill requires that certain out-of-state sellers comply with South Dakota's sales tax laws "as if the seller had a physical presence in the state." S.B. 106 § 1. The law excludes sellers that did not exceed $100,000 in gross revenue from sales within South Dakota, or did not have more than two hundred separate transactions within the state in the prior calendar year or year to date. S.B. 106 § 1(1)–(2). The law directs the State to bring a declaratory judgment action to establish that the requirement that out-of-state sellers remit sales tax to the State is valid under state and federal law. S.B. 106 § 2. The filing of such a declaratory judgment action operates as an injunction from enforcing the remittance of sales tax under Section 1 of the Act. S.B. § 3. The Legislature included in S.B. 106 eleven specific legislative findings, targeting without name Quill, which prohibits the tax plan established in the Act. S.B. 106 § 8. These findings outline the loss of revenue South Dakota experiences from online-only sales that are not subject to state taxes, the ease with which retailers could adapt to the new taxation scheme, and Justice Kennedy's call in his concurrence to Brohl that the Quill doctrine should be reconsidered. S.B. 106 § 8 (1), (6), (7). Governor Dennis Daugaard signed S.B. 106 into law on March 22, 2016, making it effective on May 1, 2016. See S.B. 106 § 9.

The South Dakota Department of Revenue sent individualized notices to 206 sellers it identified as meeting the statutory requirements of S.B. 106 on or about March 25, 2016. Doc. 1-1 at 16. The notice required the sellers to register for a license to collect and remit state sales tax by April 25, 2016. Doc. 1-1 at 16–17; see also Doc. 1-1 at 33–37. On April 28, 2016,[2] the

---

[2] One day after the State's suit against these defendants, the American Catalog Mailers Association and NetChoice filed suit against the State under the Uniform Declaratory Judgements Act for a declaratory judgment that S.B. 106 is unconstitutional under the Due Process Clause. Doc. 26-1. This Court understands that the State filed an Answer, but is unaware of any further proceedings. See Doc. 30 at 7. The American Catalog Mailers Association and NetChoice collectively represent many major businesses engaged in catalog marketing and online retailing.

State initiated a state court suit against four non-registered companies, Wayfair, Inc., Systemax, Inc., Overstock.com, Inc., and Newegg, Inc., under the Act's provisions. Doc. 1-1. In its complaint, the State "recognizes that a change in federal constitutional doctrine will be necessary for the State to prevail in this case." Doc. 1-1 at 23. The State's complaint includes numerous references to Bellas Hess and Quill, and many of the Legislature's findings. Doc. 1-1 at 6–7, 18. The prayer for relief requests that "the Court declare that the requirements of section 1 of the Act are valid" and that "the Court enter an injunction requiring the defendants to register for a license to collect and remit the sales tax." Doc. 1-1 at 23–24. Upon receiving the State's complaint, Systemax, Inc. voluntarily agreed to register with the Department of Revenue to remit taxes under the Act, and was then dismissed from the lawsuit. See Doc. 1 at 2.

Wayfair, Inc., Overstock.com, Inc., and Newegg, Inc. filed a notice of removal in the District of South Dakota, Central Division. Doc. 1. The notice of removal alleges a question of federal law to support jurisdiction under 28 U.S.C. § 1331 by pointing to the State's declaratory judgment action seeking S.B. 106's constitutional validity, and the State's acknowledgement that a change in "federal constitutional doctrine" is required before the State can prevail. Doc. 1 at 3. The State filed a Motion to Remand to State Court, Doc. 21, and on the same day the Defendants filed a Motion for Summary Judgment, Doc. 25. The State concedes in its briefing that the Defendants' Motion for Summary Judgement should be granted, but by the state court after remand. Doc. 27 at 16. The Defendants oppose the State's Motion to Remand. Doc. 26. This Court held a hearing on the pending motions on December 8, 2016. Doc. 36.

## II.    Federal Question Jurisdiction

Subject matter jurisdiction, including upon removal, is an issue that can be raised at any time, either on motion of the parties or by the court itself, and cannot be forfeited or waived. 28

4

U.S.C. § 1447(c); <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002); <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999). A case may only be removed to federal court where the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a); <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987) (identifying diversity of citizenship or federal question jurisdiction as two ways to file in federal court). The defendant removing the case from state to federal court bears the burden of proving that the removal was proper, and federal subject matter jurisdiction exists. <u>In re Business Men's Assurance Co. of Am.</u>, 992 F.2d 181, 183 (8th Cir. 1993) (per curiam). "A defendant generally is required to cite the proper statutory basis for removal and to allege facts from which a district court may determine whether removal jurisdiction exists." <u>Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.</u>, 559 F.3d 772, 778 (8th Cir. 2009). However, federal courts have a "virtually unflagging" obligation to hear and decide cases within federal jurisdiction. <u>Colo. River Water Conserv. Dist. v. United States</u>, 424 U.S. 800, 817 (1976); <u>see also</u> <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 134 S. Ct. 584, 590–91 (2013).

Under federal question jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A majority of cases brought under federal question jurisdiction involve a cause of action that is created by federal law. <u>See Am. Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260 (1916) (establishing Justice Holmes' early conception of federal question jurisdiction). These cases easily satisfy the "well-pleaded complaint" rule, which requires that the federal question appear on the face of the plaintiff's complaint, rather than in an anticipated defense. <u>See Louisville & Nashville R.R. Co. v. Mottley</u>, 211 U.S. 149, 152 (1908); <u>Taylor v. Anderson</u>, 234 U.S. 74, 75–76 (1914); <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109, 116 (1936); <u>Williams v. Ragnone</u>, 147 F.3d 700, 702 (8th Cir. 1998) ("Federal question jurisdiction exists if

5

the 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting Franchise Tax Bd., 463 U.S. at 27–28)).

However, this case involves a "litigation-provoking problem," Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 470 (Frankfurter, J. dissenting), where "the presence of a federal issue [is] in a state-created cause of action," Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). As the State itself has admitted, in order to succeed on the substance of its complaint and with enforcement of S.B. 106, the Supreme Court must overrule itself on an issue of constitutional interpretation. See Doc. 1-1 at 23. This complicates federal question jurisdiction, and illuminates how "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." Franchise Tax Bd., 463 U.S. at 8. The Supreme Court has recognized the "awkward results" produced by these cases, "in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal pre-emption defense." Id. at 12. Beginning with Smith v. Kansas City Title & Trust Co., 225 U.S. 180, 199–201 (1921), the Supreme Court's jurisprudence in defining the outer limits of federal question jurisdiction has repeatedly emphasized the "accommodation of judgment" needed to determine jurisdiction, and eschewed bright line rules. See Gully, 299 U.S. at 117; Franchise Tax Bd., 463 U.S. at 8–9; Merrell Dow, 478 U.S. at 815; Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); see also Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013) ("In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first."); but see Grable, 545 U.S. at 320–22 (Thomas, J., concurring)

6

(suggesting the trouble of using a complex approach, rather than the straightforward rule advanced by Justice Holmes in American Well Works, 241 U.S. at 260, that federal question jurisdiction should be limited to cases where federal law creates the cause of action, may outweigh any benefits of the nuanced approach).

The State seeks a remand to state court, arguing that federal question jurisdiction is improper in this case both because the well-pleaded complaint rule is not satisfied and because the Supreme Court's holding in Franchise Tax Board is controlling. See Docs. 21, 22, 30. The Defendants oppose the motion for remand, arguing that the unique circumstances of this suit—in which the only disputed issue involves federal law, the success of the State's complaint depends on an abrogation of federal law, and the Supreme Court's decision after Franchise Tax Board in Grable specifies a different test for federal jurisdiction—support federal question jurisdiction. See Doc. 26. The parties' arguments about federal question jurisdiction in this case also implicate the Tax Injunction Act, 28 U.S.C. § 1341; the Eleventh Amendment; and comity concerns surrounding a suit involving a state law specifically designed to be challenged and result in an overruling of clear Supreme Court precedent.

Franchise Tax Board is the case most closely analogous to this one. In Franchise Tax Board, the Supreme Court addressed a case raising the issue whether the Employee Retirement Income Security Act of 1974 (ERISA) "permits state tax authorities to collect unpaid state income taxes by levying on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan." 463 U.S. at 3–4. However, the particular question addressed in Franchise Tax Board was whether the district court properly had federal question jurisdiction over the complaint, which consisted of one claim under the California tax code, and another claim under the California Declaratory Judgment Act. Id. at 13. In Franchise Tax Board, the

7

trustees of the targeted ERISA-covered vacation benefit plan argued that the extensive regulations covering ERISA were intended to preempt state tax laws, and they "lack[ed] the power to honor the levies made upon them by the State of California." Id. at 6. The Supreme Court swiftly rejected federal jurisdiction over the California tax code claim, because "California law establishes a set of conditions, without reference to federal law, under which a tax levy may be enforced," and "federal law becomes relevant only by way of a defense to an obligation created entirely by state law," the precise situation for which the well-pleaded complaint rule was created. Id. at 13–14. The Supreme Court affirmed that the well-pleaded complaint rule still applied, "even if the [federal] defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Id. at 14.

The Supreme Court took more time in analyzing possible federal jurisdiction on the remaining claim under California's Declaratory Judgment Act, because the federal preemption question was a "necessary element" of the cause of action. Id. at 14. The Act required an "actual controversy relating to the legal rights and duties" of the parties, and the "only questions in dispute" involved ERISA interpretation. Id. at 14. The Supreme Court drew from Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950), where it interpreted the federal Declaratory Judgment Act, 28 U.S.C. § 2201, to mean that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." Franchise Tax Bd., 463 U.S. at 16 (quotation omitted). The Supreme Court then considered whether to apply the same principle to state-created declaratory judgment acts. Id. at 15–19. In an effort to avoid making the rule of Skelly Oil "a dead letter," the Supreme Court held that "federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state

8

declaratory judgment, but <u>Skelly Oil</u> would bar jurisdiction if the plaintiff had sought a federal declaratory judgment." <u>Id.</u> at 18–19.  The Supreme Court observed that "[t]here are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law." <u>Id.</u> at 21.  The Supreme Court ultimately summarized its holding:

> Under our interpretations, Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. We hold that a suit by state tax authorities both to enforce its levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA, is neither a creature of ERISA itself nor a suit of which the federal courts will take jurisdiction because it turns on a question of federal law.

<u>Id.</u> at 27–28.

In <u>Grable</u>, decided over twenty years after <u>Franchise Tax Board</u>, the Supreme Court again considered the limits of federal question jurisdiction when federal law did not create the cause of action.  545 U.S. at 310.  The dispute in <u>Grable</u> involved a seizure and sale by the Internal Revenue Service of real property owned by Grable & Sons Metal Products, Inc. (Grable) to satisfy its federal tax delinquency. <u>Id.</u>  Grable received actual notice of the sale by certified mail as required by 26 U.S.C. § 6335, but did not exercise its right to redeem the property. <u>Id.</u>  After the sale, the Government provided Darue Engineering & Manufacturing (Darue) a quitclaim deed to the property. <u>Id.</u>  Grable later brought a state quiet title action, arguing that 26 U.S.C. § 6335 required personal service for the notice of any sale, rather than service by mail. <u>Id.</u> at 311.  The Supreme Court held that the district court had federal question jurisdiction over the case because "[w]hether Grable was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim." <u>Id.</u> at 315.  Before announcing its four-part test that

9

would be key to bringing "some order to this unruly doctrine," Gunn, 133 S. Ct. at 1065, the

Supreme Court in Grable referred to Franchise Tax Board in noting:

> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

Grable, 545 U.S. at 313–14.  The Supreme Court ultimately held that the relevant, four-part

question in such a jurisdictional dispute was "does a state-law claim necessarily raise a stated

federal issue, actually disputed and substantial, which a federal forum may entertain without

disturbing any congressionally approved balance of federal and state judicial responsibilities."

Id. at 314.

Without directly comparing the facts in Grable to those in Franchise Tax Board, the

Supreme Court applied the new four-part test to find that the district court properly exercised

jurisdiction over the claim.  Grable, 545 U.S. at 314–16.  First, the Court found that "[w]hether

Grable was given notice within the meaning of the federal statute is thus an essential element of

its quiet title claim," necessarily raising the federal issue.  Id. at 315.  Second, the question of

federal law was "the only legal or factual issue contested."  Id.  Third, the dispute revolved

around the interpretation of federal statutory law that would substantially affect the federal

government's interest in collecting taxes necessary to its function.  Id. ("The meaning of the

federal tax provision is an important issue of federal law that sensibly belongs in a federal

court.").  Fourth and finally, the Court noted that the balance of "federal-state division of labor"

would not be interrupted, because it would only "be the rare state title case that raises a contested

10

matter of federal law."[3]  Id.  The Court also discussed its seemingly contradictory decision in Merrell Dow, 478 U.S. at 804, explaining that when read in its entirety, Merrell Dow treats "the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." Id. at 318. Otherwise, the Court reasoned, a "tremendous number of cases" could be invited into federal court, whenever a federal standard existed absent a federal cause of action. Id. at 318.[4]

### III.   Discussion

The State of South Dakota relies primarily on the Supreme Court's holding in Franchise Tax Board that "a state's suit for a declaration of the validity of state law . . . is not within the original jurisdiction of the United States district courts," as controlling and the end of the analysis when a state tax law is being challenged on federal grounds, as the case exists here. 463 U.S. at 21–22; Doc. 22 at 10–14. The Defendants respond that the unique nature of this case pulls it away from the limited holding of Franchise Tax Board, and into the newer, four-part federal question jurisdiction analysis adopted by the Supreme Court in Grable. 545 U.S. at 314; Doc. 26 at 9–10. This case involves the nearly exact scenario present in Franchise Tax Board, where the Supreme Court decided that, notwithstanding that the state declaratory judgment action involved a federal question as a "necessary element," there was no federal question jurisdiction. Grable did not overrule Franchise Tax Board.

---

[3] The Court also noted that quiet title actions were "some of the earliest exercises of federal-question jurisdiction over state-law claims." Id. at 315.

[4] Counsel in Grable suggested that Merrell Dow should be limited so that only constitutional, rather than statutory, questions of federal law overlying state law claims should trigger federal question jurisdiction. Id. at 320 n.7. The Court acknowledged that constitutional questions were more likely to justify federal jurisdiction under § 1331, but refused to endorse counsel's proposition. Id. at 320 n.7.

The Supreme Court's test in <u>Grable</u>, when applied to this case, does not establish federal question jurisdiction. First, the State's complaint does not "necessarily raise a stated federal issue," as that phrase is used in <u>Grable</u>. 545 U.S. at 314. Certainly, the central issue in the case is the constitutionality of S.B. 106, and S.B. 106 is designed to test whether Justice Kennedy's concurrence in <u>Brohl</u> might signal that the Supreme Court is ready to overturn <u>Quill</u>. The constitutionality of S.B. 106 under <u>Quill</u>, however is not a necessary element of the State's complaint, is not needed for the "vindication of [its] right under state law," and the State's complaint does not then "necessarily" raise a federal issue. <u>See Franchise Tax Bd.</u>, 463 U.S. at 9. This is evidenced in part by Systemax, Inc. voluntarily agreeing to comply with the State's registration requirement.[5] <u>See</u> Doc. 1 at 2. The dubious constitutionality of S.B. 106 under <u>Quill</u> is a necessary element of the Defendants' defense, but this brings the Court squarely back to the well-pleaded complaint rule. <u>See Caterpillar, Inc.</u>, 482 U.S. at 392.

The Supreme Court identified the requirement that the "disputed question of federal law" be "a necessary element of one of the well-pleaded state claims" in <u>Franchise Tax Board</u>, and incorporated this requirement into its succinct test for this doctrine in <u>Grable</u>. <u>Franchise Tax Bd.</u>, 463 U.S. at 13; <u>Grable</u>, 545 U.S. at 314. The factual scenario that led to federal jurisdiction in <u>Grable</u> under the Supreme Court's four-part test has consistently been described as an exceptional one, both by the Supreme Court and by the Eighth Circuit. <u>See, e.g.</u>, <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699–701 (2006) (describing <u>Grable</u> as "exemplary" and creating a "special and small category" of federal question jurisdiction that was a "pure issue of law" and not one that was "fact-bound and situation-specific" before rejecting

---

[5]Recently, the online retailer Amazon similarly reached an agreement with the State to voluntarily collect and remit state sales tax, beginning February 1, 2017. Gov. Dennis Daugaard, State of the State Address (Jan. 10, 2017), available at http://sd.gov/governor/governor/speeches.aspx.

jurisdiction); <u>Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 772 F.3d 158, 163–64 (3rd Cir. 2014), <u>aff'd</u>, 136 S. Ct. 1562, 1567, 1575 (2016) (finding violation of federal securities regulation was not necessarily raised where the federal regulation was "not an element of any of Plaintiffs' claims," and the claims "could be decided without reference to federal law" under state common law); <u>Great Lakes Gas Transmission LP v. Essar Steel Minn., LLC</u>, 843 F.3d 325, 331–34 (8th Cir. 2016) (emphasizing <u>Grable</u>'s narrowness and rejecting federal jurisdiction under its analysis where the federal issue arose in a gas transportation tariff filed with a federal agency, and where the issue was not substantial nor able to be decided without disrupting the balance of federal-state responsibilities).

Unlike here, in <u>Grable</u>, the plaintiff had to prove as a necessary element of its claim that the Government's notice was insufficient under the federal statute. Here, in addition to Systemax, Inc. voluntarily complying with S.B. 106 after the institution of a lawsuit, the State can receive at least part of the injunctive relief it seeks in its prayer for relief by proving that the Defendants fall within the reach of S.B. 106, and that they have made over $100,000 of gross sales within the state or have accomplished more than 200 separate sales transactions within the state during the last calendar year or year to date. <u>See</u> S.B. 106 § 1(1)–(2). S.B. 106 is self-contained; everything that the State needs to collect its out-of-state sales taxes is written into the law and reflected in the elements of the State's complaint. Although the Complaint—and indeed S.B. 106—contemplates and seeks to test the defense that <u>Quill</u> renders S.B. 106 unconstitutional, that issue nevertheless arises as a defense to the State's claim. Thus, the application of the well-pleaded complaint rule prohibits the removal into federal court.

One other <u>Grable</u> factor suggests a lack of federal jurisdiction in this case. Although this case may raise a "pure issue of law" involving a state law passed solely to seek to overturn

13

federal precedent, it is not certain that a federal district court could assume jurisdiction over this case "without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314.  Unlike Grable, where the required interpretation was solely of a federal statute with a state law claim as a vehicle, this case involves the interpretation of a *state* statute as it relates to the United States Constitution.  As part of the balancing of federal and state judicial responsibilities, state courts are bound not only to follow state law, but also Supreme Court precedent interpreting and applying the United States Constitution.  See U.S. Const. art. VI, cl. 2.  Precedents of the Supreme Court being binding on state courts thus appears to be part of the "congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.  To seize federal jurisdiction contrary to the direct holding of Franchise Tax Board could improperly suggest that this Court thought South Dakota state courts somehow incompetent to follow that directive.  See Wisconsin v. Constantineau, 400 U.S. 433, 440 (1971) (Berger, C.J., dissenting).

Furthermore, while the Supreme Court added to, and clarified, the factors guiding lower court consideration of federal question jurisdiction in Grable, Grable did not abrogate or modify in any way the specific holdings of Franchise Tax Board: that "a State's suit for a declaration of the validity of state law . . . is not within the original jurisdiction of the United States district courts," and "a suit by state tax authorities both to enforce its levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA, is neither a creature of ERISA itself nor a suit of which the federal courts will take jurisdiction because it turns on a question of federal law."  463 U.S. at 21–22, 28.  Franchise Tax Board is more factually similar to the State's suit surrounding S.B. 106 than any other case cited by the parties or located by this Court.

14

## IV.    Other Arguments Regarding Jurisdiction

Although federal question jurisdiction is not present under the principles of <u>Franchise</u> <u>Tax Board</u> and <u>Grable</u>, this Court will briefly address the State's other arguments seeking to bar jurisdiction.  The State raises the issues of federal-state comity, the Eleventh Amendment, and the Tax Injunction Act as further bars to federal jurisdiction.  <u>See</u> Doc. 22.  While none of these definitively bar federal jurisdiction in this particular case, all form part of the milieu of directives from Congress and the Supreme Court suggesting caution with assuming federal jurisdiction here.

### A.    Federal-State Comity

The doctrine of federal-state comity is another, albeit moveable, roadblock to federal court jurisdiction.  The doctrine reflects "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."  <u>Younger v.</u> <u>Harris</u>, 401 U.S. 37, 44 (1971).  A century and a half of tradition counsels lower federal courts to be particularly cautious before ruling on the constitutionality of state tax laws.  <u>See generally</u> <u>Dows v. Chicago</u>, 78 U.S. (11 Wall.) 108 (1871); <u>Boise Artesian Hot & Cold Water Co. v. Boise</u> <u>City</u>, 213 U.S. 276 (1909); <u>Matthews v. Rodgers</u>, 284 U.S. 521 (1932); <u>Great Lakes Dredge &</u> <u>Dock Co. v. Huffman</u>, 319 U.S. 293 (1943); <u>Fair Assessment in Real Estate Ass'n v. McNary</u>, 454 U.S. 100 (1981); <u>Levin v. Commerce Energy, Inc.</u>, 560 U.S. 413 (2010).

The State raises the prudential issue of federal-state comity in the interpretation of state tax laws, particularly as expressed in <u>Levin</u>, 560 U.S. at 431.  Doc. 22 at 14–15.  In <u>Levin</u>, the Supreme Court declined federal jurisdiction over a suit involving allegedly discriminatory state

commercial taxation under the comity doctrine because of a "confluence of factors," including seeking review of an issue over which the state held wide regulatory latitude, the issue not raising any fundamental right or classification, attempting federal-court jurisdiction to improve a competitive position, the state court remaining better positioned to correct any constitutional violation, and the constraint the Tax Injunction Act may place on the federal court's remedial options. 560 U.S. at 431–32. Previously, the Supreme Court has explained that it "has relied upon principles of comity . . . to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." Hibbs v. Winn, 542 U.S. 88, 107 n.9 (2004) (internal quotation and citation removed). While the doctrine of comity undoubtedly is strongest in cases involving a state's regulation and taxation of commercial matters, this is not a case like Levin, which involved "a taxpayer's complaint about allegedly discriminatory state taxation framed as a request to increase a competitor's tax burden." 560 U.S. at 425–26. Instead, it is a unique situation where a state has passed a tax law it knows to be presently unconstitutional to create a test case to seek to overturn the current Supreme Court precedent, and has instituted its own suit to begin judicial review. The participation of the State in this case as a plaintiff and the State's concession that the law is unconstitutional under existing precedent lessen comity concerns. See Doc. 27 at 16. There is a limited concern here of federal interference "by prevention with the fiscal operations of state governments." Fair Assessment, 454 U.S. at 109 (quoting Boise Artesian, 213 U.S. at 282). While a comity interest reflecting a "proper respect for state functions" may exist in letting the South Dakota state court declare S.B. 106 unconstitutional in the first instance, the more important consideration here seems to be the "recognition of the fact that the entire country is made up of a Union of separate state governments," Younger, 401 U.S. at 44, that have agreed to

16

be bound by the directives of the federal Congress and the interpretations of the Supreme Court. Comity concerns are part of the "welter of issues" here, but it is <u>Franchise Tax Board</u> and not strictly comity that justifies remand.

### B. Eleventh Amendment

The State argues that the Eleventh Amendment prohibits the involuntarily removal of this case to federal court. Doc. 22 at 23–26. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. amend XI. The Eleventh Amendment is a textual security of the fundamental principle of sovereign immunity held by state governments. <u>See</u> <u>Ex parte State of New York</u>, 256 U.S. 490, 497 (1921). A state can waive its rights in sovereign immunity and the Eleventh Amendment, but consent to suit in state court does not automatically encompass consent to suit in federal court. <u>See</u> <u>Great N. Life Ins. Co. v. Read</u>, 322 U.S. 47, 54 (1944). In accordance with many circuits, the Eighth Circuit has interpreted the Eleventh Amendment as limiting "the jurisdiction of federal courts only as to suits *against* a state." <u>Gilliam v. City of Omaha</u>, 524 F.2d 1013, 1015 (8th Cir. 1975) (emphasis added).

The State, relying on the holding of <u>Thomas v. FAG Bearings Corp.</u>, argues that the immunity articulated in the Eleventh Amendment extends to situations where states are plaintiffs, in addition to those where states are defendants. Doc. 30 at 23; 50 F.3d 502 (8th Cir. 1995). In <u>FAG Bearings</u>, the Eighth Circuit prohibited the involuntary joinder of a state agency as a defendant in a case removed to federal court, where the state agency could be later realigned as a plaintiff, because the state agency would be unfairly prejudiced if it was forced to bring suit at a time other than its own choosing. 50 F.3d at 505–06. The Eight Circuit in <u>FAG Bearings</u>

17

based its holding in part on the unusual circumstances that the state agency would suffer specific harms if it were forced to file suit before it was ready, potentially losing its ability to sue under alternate statutes of its choice because of incomplete investigations and discovery. Id. at 505 n.10. Because the State of South Dakota filed suit on its own accord in state court in this case, at a time of its own choosing, with its hand-picked defendants, no such unfair prejudice is present, and FAG Bearings can appropriately be distinguished. Although the Supreme Court has not opined on this specific issue, a range of circuits and districts have done so, including this one. "It is well settled that the Eleventh Amendment applies only to suits 'commenced or prosecuted against' the State and does not bar removal where the State is a plaintiff." South Dakota ex rel. S.D.R.R. Auth. v. Burlington N. & Santa Fe Ry. Co., 280 F. Supp. 2d 919, 935 (D.S.D. 2003) (rejecting an argument by a state agency that the Eleventh Amendment barred removal where it was styled as a plaintiff in the state court action) (collecting district court cases); see also California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 848 (9th Cir. 2004) (distinguishing FAG Bearings, 50 F.3d at 505, as involving the involuntary joinder of a state as plaintiff, and holding "that a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction") (collecting circuit course cases). Jurisdiction over this suit is not barred by the Eleventh Amendment because the State is the plaintiff, not the defendant in this action.

### C. Tax Injunction Act

Finally, as relevant to this dispute over a state tax law, the Tax Injunction Act of 1937 states that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "[T]he statute has its roots in equity practice, in principles of

federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976). The Supreme Court has advised cases should be narrowly construed where it is alleged the state remedy is not "plain, speedy and efficient." See California v. Grace Brethren Church, 457 U.S. 393, 413 (1982). The Tax Injunction Act prohibits district courts from issuing declaratory judgements about state taxes, in addition to injunctive relief. Id. at 408.

The State argues that the Tax Injunction Act bars federal jurisdiction in this case, specifically as interpreted by Grace Brethren Church and its progeny. Doc. 22 at 26. In Grace Brethren Church, the Supreme Court held that the Tax Injunction Act clearly barred both injunctive and declaratory relief to stop the collection of state taxes. Id. at 408. Under Tax Injunction Act jurisprudence, however, the specific type of relief requested by the State of South Dakota in its initial claim has not been prohibited. Antecedent court interpretation of the Tax Injunction Act has confined the Act to its stated purpose: "barring anticipatory actions by taxpayers to stop the tax collector from initiating collection proceedings." Jefferson Cty. v. Acker, 527 U.S. 423, 435 (1999); see also Hibbs, 542 U.S. at 107 ("In sum, this Court has interpreted and applied the TIA only in cases Congress wrote the Act to address, i.e., cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes."). As such, the Tax Injunction Act has been determined not to apply to state collection actions removed to federal court. Acker, 527 U.S. at 433–34.

The Eighth Circuit similarly has recognized the limited scope of the Act. In Jefferson City v. Cingular Wireless, LLC, the Eighth Circuit found "a crucial distinction between a plaintiff who seeks a declaratory judgment that a specific tax is unconstitutional or invalid and a plaintiff who seeks a declaratory judgment that a particular taxpayer is engaged in an activity

19

that makes the taxpayer subject to a state or local tax." 531 F.3d 595, 604 (8th Cir. 2008). The Eighth Circuit held that Jefferson City could continue its declaratory judgment suit in federal court to determine whether a cell phone provider was subject to its telecommunication services taxes. Id. Specifically, the Eighth Circuit declined to follow a case that held the Tax Injunction Act always barred declaratory judgment actions sought by local governments, and found more persuasive a case that held a declaratory judgment brought by a city was not barred "because it was not a claim by a taxpayer seeking to prevent tax collection proceedings." Id.

Although the Defendants' Motion for Summary Judgment may contain a request for an ultimate relief barred under Grace Brethren Church, the State's complaint, the one that is removed and analyzed for jurisdictional competency, does not. The State's complaint is not styled in the form of a collection proceeding, specifically authorized under Acker, nor is it identical to the declaratory judgment sought in Jefferson City. However, the declaratory judgment sought by the State in its complaint resembles the claim in Jefferson City. Under the weight of cases explaining the Tax Injunction Act as barring "anticipatory actions by taxpayers to stop the tax collector," the Tax Injunction Act would not appear to bar this Court from hearing the case. However, as federal question jurisdiction is missing under Franchise Tax Board and Grable, this Court need not resolutely reach that decision.

## V.    Conclusion

Although the only disputed issue in this case is one of federal law, following the Supreme Court's federal question jurisprudence in Franchise Tax Board and Grable requires this Court to conclude that this case is not within federal question jurisdiction under 28 U.S.C. § 1331. Therefore, it is hereby

ORDERED that Plaintiff's Motion to Remand, Doc. 21, is granted. It is further

20

ORDERED that the case is remanded to the Circuit Court for the Sixth Judicial Circuit, Hughes County, South Dakota for decision of the pending and fully briefed motion for summary judgment and for all further proceedings.

DATED this _17th_ day of January, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

21